UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Donna Dawson, | Court No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Equifax Information Services LLC, Ditech Financial LLC, and Bank of the West, | |
| Defendants. | **JURY TRIAL DEMANDED** |

INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information

on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Donna Dawson ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Equifax Information Services LLC ("Equifax"), Ditech Financial LLC ("Ditech") and Bank of the West ("BOTW") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information to national reporting agencies and Defendants' failure to properly investigate Plaintiff's disputes.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in Minnesota.

7. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

9. Through this complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

11. This Court has federal question jurisdiction because this case arises out of Defendants' violation of federal law—the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA").

12. Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise to Plaintiff's claims occurred in Minnesota.

13. Defendants are subject to the Court's personal jurisdiction, as Defendants conduct business within Minnesota, and Defendants' conduct giving rise to this action accrued in Minnesota.

14. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

15. Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Defendants were the principal, agent (actual or ostensible) or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff or the relief prayed for herein.

## PARTIES

16. Plaintiff is a natural person residing in Meeker County, Minnesota.

17. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

18. Defendant Equifax is an entity doing business in the State of Minnesota.

19. Defendant Equifax's registered agent address is: Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.

20. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

21. Defendant Ditech is an entity doing business in the State of Minnesota.

22. Defendant Ditech's registered agent address is: C T Corporation System, 1010 Dale Street N, St. Paul, MN 55117-5603.

23. The creditor named herein, Ditech, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

24. Defendant BOTW is an entity doing business in the State of Minnesota.

25. Defendant BOTW's registered agent address is: C T Corporation System, 1010 Dale Street N, St. Paul, MN 55117-5603.

26. The creditor named herein, BOTW, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

27. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

### FACTUAL ALLEGATIONS

28. On or about December 28, 2017, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Minnesota pursuant to 11 U.S.C. § 1301 *et seq*. Plaintiff's case was assigned Case Number 17-43910 ("Bankruptcy").

29. Plaintiff received a discharge on April 24, 2018.

30. Accordingly, debts to Plaintiff's creditors was discharged through the Bankruptcy on April 24, 2018.

31. It is illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

32. However, Defendants either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

33. Defendants' reporting post-Bankruptcy derogatory information was inaccurate and misleading in that Defendants continued reporting information based on Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the Bankruptcy filing, thereby rendering the disputed information "inaccurate".

34. Additionally, Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

35. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

36. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit

reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

37. On information and belief, Defendants adopted and at all times relevant implemented the Metro 2 format.

38. On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

39. Despite Metro 2 Format's instructions, Defendants failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

40. To this end, the adverse reporting on the Plaintiff's report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

41. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

### *Equifax and Ditech's Inaccurate Reporting*

42. In Plaintiff's credit report from Equifax dated sometime before November 5, 2018, Equifax and Ditech inaccurately reported that Plaintiff had a scheduled payment amount of $1562 on a Ditech account (the "Ditech Account").

43. The Ditech Account had a balance of $0, so it would be impossible for Plaintiff to have a scheduled payment amount of $1562 on the Ditech Account.

44. Additionally, the Ditech Account was paid and closed in April 2016.

45. Nonetheless, it was also inaccurate to report a scheduled payment amount since Plaintiff filed for Bankruptcy on December 28, 2017 and received a discharge on April 24, 2018.

46. Thus, any amount due or owing would have been discharged in the Bankruptcy.

47. It was therefore inaccurate for Equifax to report that Plaintiff a scheduled payment amount of $1562 on the Ditech Account.

### *Equifax and BOTW's Inaccurate Reporting*

48. In Plaintiff's credit report from Equifax dated sometime before November 5, 2018, Equifax and BOTW inaccurately reported that Plaintiff had a scheduled payment amount of $173 on a BOTW account (the "BOTW Account").

49. The BOTW Account had a balance of $0, so it would be impossible for Plaintiff to have a scheduled payment amount of $173 on the BOTW Account.

50. Additionally, the BOTW Account was paid and closed in October 2011.

51. Nonetheless, it was also inaccurate to report a scheduled payment amount since Plaintiff filed for Bankruptcy on December 28, 2017 and received a discharge on April 24, 2018.

52. Thus, any amount due or owing would have been discharged in the Bankruptcy.

53. It was therefore inaccurate for Equifax to report that Plaintiff a scheduled payment amount of $173 on the BOTW Account.

### *Re-Reporting Inaccurate Information After Dispute*

54. On or after November 5, 2018, Plaintiff disputed Equifax's reporting regarding the Ditech Account and BOTW Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

55. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected as to the Ditech Account and BOTW Account.

56. Equifax was required to conduct a reinvestigation into this specific debt on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

57. Upon information and belief, Equifax notified Ditech and BOTW of Plaintiff's dispute.

58. A reasonable investigation by Ditech and Equifax would have indicated that they were reporting the Ditech Account inaccurately.

59. A reasonable investigation by BOTW and Equifax would have indicated that they were reporting the BOTW Account inaccurately.

60. Instead, upon information and belief, Defendants re-reported that Plaintiff had a scheduled payment amounts on the Ditech Account and BOTW Account.

61. Specifically, Ditech and Equifax re-reported that Plaintiff had a scheduled payment amount of $1562 on the Ditech Account.

62. Specifically, BOTW and Equifax re-reported that Plaintiff had a scheduled payment amount of $173 on the BOTW Account.

63. Defendants, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

64. Defendants failed to review all relevant information provided by Plaintiff in the dispute to Defendants, as required by and in violation of 15 U.S.C. § 1681i.

65. Due to Defendants failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

66. Defendants' continued inaccurate and negative reporting of the Ditech Account and BOTW Account in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

67. Also as a result of Defendants continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness and emotional distress.

68. By inaccurately reporting account information after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

**FIRST CAUSE OF ACTION**
**THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681 *ET SEQ.* (FCRA)**

69. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

70. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

71. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

72. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

### REQUEST FOR JURY TRIAL

73. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial be jury.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful and an invasion of privacy;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against each Defendant;

4. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3), against Defendants; and

5. Any other relief the Court may deem just and proper.

**HYDE & SWIGART**

Date: February 19, 2019

By: /s/ Anthony Chester
Anthony P. Chester (Bar No. 0396929)
Robert L. Hyde (Bar No. 035109X)
**HYDE & SWIGART**
120 South 6th Street, Suite 2050
Minneapolis, MN 55402
Telephone:  (952) 225-5333
Facsimile:   (800) 635-6425
Email: tony@westcoastlitigation.com
*Attorneys for Donna Dawson*